[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties are before the court on two motions. One motion is for contempt filed by the plaintiff alleging that the defendant has failed to comply with the terms of the separation agreement entered as part of a decree of dissolution. The other motion is one asking for the determination of an arrearage claiming the plaintiff owes the defendant money under the terms of the same separation agreement. CT Page 5692
The plaintiff claims that the defendant has failed to pay her what he owes under the terms of the separation agreement with respect to the following:
1. $350 per week for 77 weeks of her employment for Peerless Importers, Inc.;
2. the balance of a $185,000 which the defendant was supposed to pay for the college expenses for their three children;
3. the interest payment on the third mortgage in full for one year and half for the second year;
4. uninsured medical expenses which he failed to pay; and,
5. a telephone bill which he did not pay.
The parties have agreed, however, that the uninsured medical and the telephone bill will be paid.
The defendant, on the other hand, claims that there is a balance due him from commissions which the plaintiff received from Peerless Importers. He also alleges that he has paid $185,000 toward the college expenses of the three children and that his obligation to pay the interest on the third mortgage should be waived because the plaintiff was able to settle with the FDIC on a lower amount of principal and interest following the default on the mortgage caused by his failure to pay.
The agreement which is the basis for the claims of both parties was approved by Judge Ryan at the time of the dissolution and it became a part of the court's order and decree. Interpreting the agreement, which has been incorporated into the judgment, requires that it be construed as a contract. Barnard v.Barnard, 214 Conn. 99 at 109 (1990).
Such a contract must be construed as a whole and to effectuate the intent of the contracting parties. Barnard v.Barnard, supra, at 109. Further, the court in Barnard said,
 "In interpreting contract items we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must CT Page 5693 be accorded its common, natural and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract."
Barnard v. Barnard, supra, p. 109.
Further, the court said, "Where the language of the contract is clear and unambiguous, contract is to be given effect according to its terms." Barnard v. Barnard, supra, p. 110.
The first claim which covers both the plaintiff's and the defendant's arguments is that requiring the interpretation of paragraph 5.10 of the separation agreement which reads as follows:
 "Commencing January 1, 1992, the wife herein agrees to retain an amount equal to $350 per week, and to remit to the husband the balance of any and all monies received from Peerless Importers, Inc., which monies represent commissions earned on liquor sales to stores owned or operated by the husband or any partner or designee of the husband or sold by the husband on the wife's behalf to any store. Upon the sale of the premises, the wife agrees to remit to the husband any and all monies received from Peerless representing commissions earned on liquor sales to stores owned or operated by the husband or any partner designee of the husband or sold by the husband on the wife's behalf to any store. The wife shall be entitled to reimbursement of amounts necessary to meet her tax obligations on the commissions earned from Peerless in the event the amount withheld was insufficient to meet the tax obligation on said earnings. Said obligations shall only continue as long as the wife is an employee of Peerless Importers, Inc. In the event the commissions from Peerless are less than $350 per week, the husband shall be obligated to pay the difference to the wife such that she has $350 per week. Such adjustment shall be made at the end of each month."
The wife was employed as a sales person at Peerless Importers, Inc. for a period of 77 weeks following the judgment of dissolution. During that time, the premises referred to above was the marital home located at 42 Hurlingham Drive, Greenwich, and it was not sold during that period. It was sold in June of 1994, and the plaintiff's employment terminated in August or CT Page 5694 September of 1993. The wife, therefore, claims that during the period of 77 weeks the wife was due $350 per week or $26,950. She did receive $14,890 from Peerless Importers, Inc. for liquor sales relating to liquor stores owned or operated by the husband. However, that did not amount to $350 per week as set forth in the agreement and, therefore, her claim is that the defendant owes her $12,060 representing the difference between $14,890 she received and the $26,950 representing $350 a week for 77 weeks.
The defendant claims that the agreement required her to turn over all commissions, both before and after the sale of the premises.
The court believes that the agreement as it stands requires the plaintiff to pay to the defendant the difference between $350 and whatever commissions were received from Peerless Importers prior to the sale and during the term of her employment. This interpretation is bolstered by the fact that the first sentence with respect to the commissions reads, "commencing January, 1982, the wife herein agrees. . . ." In a subsequent sentence the words are, "upon the sale of the premises the wife agrees to remit to the husband. . . ." Furthermore, the latter part of the paragraph says, "said obligation shall only continue as long as the wife is an employee of Peerless Importers, Inc." It further goes on, "in the event the commissions from Peerless are less than $350, the husband shall be obligated to pay the difference to the wife such that she has $350 per week, such adjustment shall be made at the end of each month." Moreover, an additional sentence says, "the wife shall be entitled to reimbursement of the amounts necessary to meet her tax obligations on the commissions earned from Peerless in the event the amount withheld was insufficient to meet the tax obligation on said earnings."
It appears to the court that if the plaintiff were to turn over all of the commissions earned both before and after the sale to the defendant there would be no need to reimburse her for amounts needed to meet her tax obligations on the commissions earned since they would not be her earnings. Moreover, the fact that the obligation was to continue only so long as she was an employee reinforces the plaintiff's claim that that is what she was and she was entitled to the amount she had agreed to accept for working during that period.
Consequently, for all of the above reasons, the court interprets the agreement paragraph 5.10 to mean that the CT Page 5695 plaintiff was required to remit to the defendant only the difference between the $350 per week and the commissions earned between the time she started employment on January 1, 1992 and when she left some time in 1993. She was not required to pay all commissions received both before and after the sale of the premises. Therefore, the court finds that the plaintiff is entitled to receive $12,060 from the defendant.
The next claim in which there are conflicting positions is that the defendant has failed to pay the interest on the third mortgage on the house in accordance with paragraph 5.4 of the separation agreement. Paragraph 5.4 reads,
 "The property shall continue to be listed for sale and until such time of the sale of the premises or February 1, 1993, rental of the premises, wife's remarriage, cohabitation, or death, whichever shall first occur, the husband shall pay the following monthly expenses: (1) first mortgage payment; (2) second mortgage payment; (3) third mortgage payment; (4) all utilities including telephone to a maximum telephone charge of $200; and (5) home insurance."
The plaintiff claims the defendant owes her $20,981.70 because of his failure to pay the third mortgage. His obligation was to pay 100 percent of the monthly mortgage amount from February 1, 1992 to January 31, 1993 and 50 percent from February 1, 1993 to January 31, 1994. The monthly mortgage payment was $1,165.65 for twelve months at 100 percent and twelve months at 50 percent. The total would be $20,981.70.
The defendant claimed he did not make the payment because the FDIC took over the Bank of Stamford and he did not know where to pay it. However, the plaintiff testified that she discussed with him the takeover by FDIC and suggested that he try to negotiate with FDIC to reduce the interest. He told her it was her responsibility. She therefore did negotiate with FDIC and reduced the amount of the principal and interest. The defendant now claims that he should get the benefit of that and not have to pay the plaintiff the amount he owed under the terms of the agreement.
There appears to be no basis for relieving the defendant of this obligation given the fact that he had the opportunity to reduce it himself and failed to do so. CT Page 5696
Consequently, the court finds that the defendant owes the plaintiff the sum of $20,981.70.
The next part of the agreement which the parties interpret differently is that concerning the husband's obligation to pay the first $185,000 for the college expenses of their three children, Anthony, Marisa and Michael. The provision in question is paragraph 4.1 and reads as follows:
 "The husband shall be solely obligated to pay the first $185,000 of the college expenses of the parties three children, to wit: Anthony M. Mazzola, Marisa A. Mazzola, and Michael A. Mazzola. The husband shall receive a credit towards said $185,000 obligation in an amount equal to any payments made for college expenses after January 1, 1992. College expenses as used herein shall be defined to include any and all payment for tuition, room, board, books and fees charged by the institution, transportation costs to and from the college or university. College expenses shall include all institutions which provide for post secondary education whether college, university or two year educational program."
The question is whether the defendant has now paid the first $185,000 for these college expenses. To substantiate his claim, the defendant has produced checks and credit card statements indicating the payments he has made on behalf of the three children. The parties are in agreement that he paid $52,367.40 for Marisa and $19,000 for Michael. However, the major dispute is with respect to the amount he paid for Anthony.
The defendant claims he paid $86,907.37 and the wife claims he paid $32,857.74 and an additional $448.50 for transportation expenses. The difference between the two figures is that the plaintiff claims that transportation expenses do not include the cost of buying a car or repairing it or filling it with gas. The court believes that all of those expenses are part of transportation to and from the college or university, whether to the university from home or to the university from wherever Anthony was living at the time since at one time he was not living at the college but outside of the campus. Therefore, the cost of a bicycle and its repair was included by the defendant, and the court believes it is within the terms of the agreement. CT Page 5697
In addition, using the figures supplied by plaintiff's counsel of the payments made by Mr. Mazzola and their classification, the court deducts the following items:
1. all items labeled allowances;
2. line of credit;
3. all clothing;
4. cash advances and miscellaneous household expenses;
5. gas bought in Scarsdale, Newark and Yonkers;
6. Bruce Park Sports, Frederick Super Eight, Comfort Inn, LAX World, Maryland;
7. BP Oil of Ohio.
Some of the gas was apparently not related to transportation to or from the college because it was purchased in other areas and that was deleted from the approved expenses. There was no provision for allowance and that was deleted. This is in contrast to the provision for Michael while at Brunswick where an allowance was specifically provided. (See paragraph ___ of the agreement.)
The total of the items not included under educational expenses in the court's opinion is $5,704.46 leaving a total paid by the defendant for what the court considers to be included in educational expenses of $81,202.91 for Anthony. Adding this amount to the amount spent for Marisa of $52,367.40 and $19,000 for Michael equals $151,955.78. Deducting that from $185,000 leaves $32,429.69 which would be due to the plaintiff.
The next item concerns the payment of educational expenses for Michael. The paragraph in question is paragraph 2.2 which reads:
 "Commencing January 1st, 1992, the husband shall pay to the wife during his lifetime as support for the minor child any and all educational expenses of the minor child Michael whether that be at Brunswick Preparatory School or any boarding school as and for child support CT Page 5698 until such child attains the age of 18, marries, dies or becomes emancipated, whichever event first occurs. Educational expenses shall be defined as any and all tuition, room, board, books, fees charged by the institution and the husband shall provide the minor son with an allowance. In addition, the husband shall pay the car insurance premiums for the minor child Michael as and for support."
The plaintiff is claiming the amount of $2,034 which she paid for summer school at Rye Country Day School and also for an SAT tutor. The court finds that neither of these payments come within the definition of educational expenses for Michael which are limited to "Brunswick Preparatory School or any boarding school. . . ." Neither Rye Country Day nor the SAT tutor are included within the definition of "boarding school"; consequently, the defendant does not owe the plaintiff $2,034.
There are two other items on which there is still disagreement. The husband claims he should receive a credit for having paid for heating oil in the amount of $4,000. He was obligated and agrees he was to pay for the utilities; one of the utilities would appear to be the heating system which requires oil to operate. Consequently, the court finds that heating oil is included in the requirement that he pay for the utilities and he is, therefore, not entitled to any credit for having paid it apparently under the assumption that it was part of the utility requirement.
In addition, the defendant also claims a credit for $18,000 which he paid to Antonio Vallardo, Inc. for work on the premises for which a mechanics lien was filed but never activated, that is, no lawsuit was ever filed to enforce it. It was the plaintiff's obligation to pay this bill and she did so. (See exhibit EEE.) The defendant's payment was purely voluntary and there is no basis in the agreement for any repayment to him for sums he paid voluntarily and apparently in error. Consequently, that claim is denied. The parties seemed to agree that it was the wife's obligation to pay for the lien which she has apparently done, and the defendant agrees that his was a voluntary payment. His recourse would seem to be against Mr. Vallardo, who happens to be his father-in-law. However, it does not seem the plaintiff should be required to pay him for something which she has already paid. Consequently, his claim for the $18,000 is denied. CT Page 5699
On the basis of the foregoing, the court finds that the plaintiff is entitled to the following:
1. $32,439.69 for the educational expenses still owing by the defendant;
2. telephone expenses of $1986.70 agreed to by the defendant;
3. unreimbursed medical expenses of $1291.16 agreed to by the defendant by stipulation;
4. $20,981.70 representing the interest the defendant failed to pay on the third mortgage;
5. $12,060 representing the difference between the $350 a week to which the plaintiff was entitled when the commissions from Peerless Importers were not sufficient to pay that amount.
The parties have agreed that the defendant is entitled to a credit in the amount of $32,921.82. Deducting this amount from the above total determined to be due the plaintiff gives us a balance of $35,837.43. The court orders the defendant to pay this amount to the plaintiff within thirty (30) days of the date of the judgment.
Each party shall pay the liabilities listed on his or her affidavit and each party shall pay his or her own counsel fees. The court will not find either party in contempt given the difference in the interpretation of the agreement which each presented.
It is so ordered.
MARGARET C. DRISCOLL STATE TRIAL REFEREE